## Commonwealth v. Gonzalez

*William L. Thurston,* for Commonwealth.
*John C. Tylwalk,* for defendant.

GATES, *P.J.,* November 30, 1981—On July 30, 1981 at about 10:30 in the evening, Lebanon City Police Officer, Gary Boyer, Sr., was dispatched to the vicinity of 12th and Cumberland Streets. There he found three men sitting on the bridge talking. The officer ordered the men to leave the area but defendant Samuel Gonzalez refused. The officer told him that he would return in a few minutes and if Gonzalez was still there a citation would be issued.

About eight minutes later Officer Boyer returned and Gonzalez was still sitting on the bridge. The area is a public place and there are no signs posted indicating that loitering was prohibited. Mr. Gonzalez gave the officer no difficulty and the officer observed no loud, boisterous or disorderly behavior. However, Gonzalez had refused to leave so the officer issued a citation charging defendant with a violation of Lebanon City Ordinance no. 705.01(f).

The pertinent ordinance defines disorderly conduct within the City of Lebanon as; inter alia: "(f) Any person found . . . loafing . . . in the limits of the City." There is no definition in the ordinance of the word "loafing."

Naturally defendant was convicted before the district justice and he has appealed to this court.

After hearing the Commonwealth's evidence, as recited above, defendant demurred on the grounds that the ordinance is unconstitutional. We heartily agree.

In the case of Papachristou v. City of Jacksonville, 405 U.S. 156, 31 L. Ed. 2d 110 (1972) the Supreme Court of the United States struck down a Jacksonville, Florida ordinance which is remarkably similar to that of the City of Lebanon, described above, as being void for vagueness both in the sense that it failed to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden by the ordinance, and because it encouraged arbitrary and erratic arrests and convictions. The Jacksonville ordinance purported to impose criminal penalties on "habitual loafers," a far more descriptive term than the plain and simple, common and ordinary "loafer" who, the City of Lebanon feels ought to be punished.

It seems as though Florida takes a somewhat neurotic view of idleness. The state itself has adopted a statute. A Florida Criminal Statute, section 856.02 (1965), since repealed by laws 1972, C. 72-133, §3, makes loitering, loafing or idling on public streets in any City in Florida a misdemeanor. Fortunately for Floridians the statute was declared unconstitutionally overbroad in Lazarus v. Faircloth, 310 F. Supp. 266 (S.D. Fla. 1969). There the court said at page 272:

"All loitering, loafing or idling on the streets and highways of a city, even though habitual, is not necessarily detrimental to the public welfare nor is it under all circumstances an interference with travel upon them. It may be and often is entirely innocuous. The statute draws no distinction between conduct that is calculated to harm and that which is essentially innocent."

Time and again our appellate courts have cautioned ordinance makers to give fair notice to persons of ordinary intelligence that his contemplated conduct is forbidden, because it encourages arbitrary and erratic arrests and convictions: United States v. Harriss, 347 U.S. 612, 98 L. Ed. 989 (1954); Thornhill v. Alabama, 310 U.S. 88, 84 L. Ed. 1093 (1940).

Living under the rule of law entails various suppositions, one of which is that all persons are entitled to be informed as to what the state commands or forbids.

Another aspect of the Lebanon ordinance prohibiting "loafing," appears when we focus, not on the lack of notice given a potential offender but on the effect of the unfettered discretion it places in the hands of the Lebanon Police. Even a direction from our legislature to the police to arrest all "suspicious" persons would not pass constitutional muster. A loafing prosecution may be merely the cloak for a conviction which could not be obtained on the real but undisclosed grounds for the arrest. Such authorized "crimes," though long common in Soviet Russia, are incompatible with our constitutional system.

We find it quite paradoxical that the City of Lebanon has thoughtfully scattered throughout the city, benches and places to sit and watch the world go by. Luis Munoz-Martin, former Governor of Puerto Rico, commented once that "loafing" was a national virtue in his Commonwealth and that it should be encouraged. "It is, however, a crime in Jacksonville." Papachristou v. Jacksonville, supra., at p. 163.

The subject of "Void-For-Vagueness Doctrine" has been subject of much litigation, as well as law review articles. I'll neither burden my secretary nor

a reader of this opinion with a discussion of them. Interested persons are directed to the following: The Void-For-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67 (1960); Amsterdam, Federal Constitutional Restrictions On The Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes of Displeasing Police Officers, and the like, 3 Crim. L. Bull. 205, Reich, Police Questioning of Law Abiding Citizens, 75 Yale L. J. 1161, 1172 (1966).

In this case at Bar, Officer Boyer had no probable cause to believe that Gonzalez was even contemplating committing a criminal offense. He was sitting on a bridge talking to friends. They were not loud, boisterous or disorderly. Officer Boyer had no right to disperse them, much less to arrest Gonzalez for doing exactly what he had a right to do, namely "loaf."

## ORDER

And now, November 30, 1981, after hearing defendant's demurrer is sustained and the citation is dismissed.